IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLENN D. TURPIN #98018357   *
Plaintiff   *

v.   *   Civil Action No. ELH-12-2409

WICOMICO COUNTY DETENTION   *
   CENTER[1]
WARDEN GEORGE KALOUROMAKIS   *
CON MED HEALTHCARE MANAGEMENT
RICHARD ROSENBLATT   *
Defendants

\*\*\*

## MEMORANDUM

On August 13, 2012, Glenn D. Turpin, then confined at the Wicomico County Detention Center ("WCDC") in Salisbury, Maryland, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 seeking money damages and injunctive relief.[2] Plaintiff named as defendants George Kaloroumakis, the Director of WCDC, and Richard Rosenblatt, Vice President of Conmed Healthcare Management ("CMH"), WCDC's contractual healthcare provider; WCDC; and CMH. The complaint, as amended, alleges that plaintiff was denied health care based upon a policy whereby detainees are provided narcotic medications only if they agree to be housed in a medical segregation unit that required 23-hour-a-day lock down. ECF Nos. 1 and 4. Plaintiff, who is Africa-American, further alleged that he was treated in a racially discriminatory manner.

---

[1] The Clerk shall amend the docket to reflect additional defendants listed in ECF 1, p. 5.

[2] Plaintiff was held at WCDC from April 17, 2012 until his release on August 27, 2012. ECF No. 11, p. 1. On September 4, 2012, plaintiff confirmed that he was no longer confined in Maryland. ECF No. 7, p. 3. His requests for injunctive relief are therefore rendered moot. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Plaintiff, who received the medication Tramadol, bases his claim of discrimination on one incident wherein he observed a white detainee, Charles Stein, who was not subjected to medical segregation, receive the medication Flexeril.[3] He describes conditions in the medical segregation unit and medication events involving other inmates, but does not claim that these conditions affected him personally. ECF 4, pp. 1-2. Plaintiff names WCDC and CMH, the contractual health care provider for WCDC, as defendants, presumably under the theory of vicarious liability known as respondeat superior. These entities are not liable under § 1983. *See Monell v. Dep't of Social Servs.*, 436 U,S, 658, 691-92 (1978); *Clerk v. Md. Dep't of Public Safety and Corr. Services*, 316 Fed. Appx. 279 (4th Cir. 2009); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).

As noted, plaintiff also names as defendants George Kaloroumakis, the Director of WCDC and Richard Rosenblatt, Vice President of Conmed Healthcare Management ("CMH"), WCDC's contractual healthcare provider. Plaintiff notes that the medical segregation unit "does not have cells for [h]andicapped [i]nmates." He describes conditions in the medical segregation unit and medication events involving other inmates, but does not claim that these conditions affected him personally. ECF 4, pp. 1-2.

---

[3] While housed at WCDC, plaintiff requested and at times was provided the medication Tramadol. According to the National Institutes of Health, "Tramadol is used to relieve moderate to moderately severe pain. Tramadol extended-release tablets are only used by people who are expected to need medication to relieve pain around-the-clock for a long time. Tramadol is in a class of medications called opiate agonists[;]" "Taking this medication in a way that is not recommended may cause serious side effects or death[;]" and, "Tramadol can be habit-forming." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/

According to the National Institutes of Health, Flexeril, also known as Cyclobenzaprine, is "a muscle relaxant, is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699/

2

The defendants have filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), ECFs 8, 11, which remain unopposed.[4] No hearing is necessary to resolve the motions. *See* Local Rule 105.6 (D. Md.).

### Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*, 473 F.Supp.2d 647, 651 (D. Md. 2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id.* at 557-558 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

---

[4] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff was notified that defendants had filed dispositive motions, the granting of which could result in the dismissal of his action. ECF 9, 12. Plaintiff has chosen not to respond.

### Discussion

It appears that plaintiff was housed at WCDC as a pretrial detainee in connection with an escape charge dating to 2003.[5] The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided to convicted prisoners by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988)). The inquiry with respect to conditions of confinement is whether those conditions amount to punishment of the pretrial detainee, as due process proscribes punishment of a detainee before proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Not every inconvenience that is encountered during pretrial detention amounts to "punishment" in the constitutional sense. *Martin*, 849 F.2d at 870. A particular restriction or condition of confinement amounts to unconstitutional punishment in violation of the Fourteenth Amendment if it is imposed with the express intent to punish or it is not reasonably related to a legitimate, non-punitive goal. *Bell*, 441 U.S. at 538-39 (restrictions or conditions that are arbitrary or purposeless may be considered punishment).

In determining whether the challenged conditions amount to punishment, it is not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Only conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). In order to establish the imposition of cruel and unusual punishment, plaintiff

---

[5] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=22K03001166&loc=48&detailLoc=K.

must prove two elements - that he suffered deprivation of a basic human need that was "*objectively* sufficiently serious," and that "*subjectively* [defendants] acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).[6]

Plaintiff's claims against defendants are based on supervisory liability, known as respondeat superior. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992) (citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982)); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991).

Instead, liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury

---

[6] To withstand summary judgment on a challenge to prison conditions, plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

5

suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Such a showing has not been suggested here with regard to conduct attributed to either named defendant.

The court's inquiry, however, does not end there. To state a cognizable civil rights claim for denial of medical care, plaintiff must demonstrate that the actions of medical personnel (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Plaintiff claims that placement on the medical segregation unit would have resulted in a loss of privileges, including access to television and telephones and the requirement that he eat in his cell. ECF 1, p. 10. He voluntarily chose to forego medication in order to remain housed in another area in order to avail himself of such privileges. Nothing suggests that plaintiff would not have been provided Tramadol, a narcotic, had he complied with the simple requirement that he remain housed in a unit staffed with medical personnel able to monitor his condition. The fact that a fellow detainee who was provided a less-potent medication did not have to be housed on medical segregation, without more, does not establish either discriminatory animus or a denial of equal protection.

For these reasons, a separate order shall be entered granting defendants' motions to dismiss.

Dated: January 28, 2013           /s/
                                  Ellen Lipton Hollander
                                  United States District Judge